DECISION AND JUDGMENT ENTRY
This is an appeal from a judgment of the Lucas County Court of Common Pleas, Juvenile Division, terminating a mother's parental rights and granting permanent custody of a five-year-old child to a county children services board. Because appellant was not denied effective assistance of counsel, nor was she improperly prejudiced by in-court descriptions of her child's injuries, we affirm.
Appellant is Tammy B., mother of five-year-old Ashley B., the child whose permanent custody is the subject of this appeal. Ashley's father has not been identified.
In 1996, this family came to the attention of the Henry County Department of Human Services on a report that Ashley was a neglected and/or dependent child. A Henry County Department of Human Services inspection of the home occupied by appellant, Ashley and appellant's invalid mother revealed that the home was, "* * * filthy, infested with cockroaches, and containing many dangerous conditions * * *." The agency sought and obtained an adjudication that Ashley was dependent and neglected. The Henry County Court of Common Pleas granted protective supervision of Ashley to the Henry County Department of Human Services. Although the child was maintained in the home, a home parenting educator was provided for appellant.
In August 1997, Ashley, appellant, and appellant's mother moved to the east Toledo home of appellant's sister. Henry County ceded jurisdiction over appellant to appellee, Lucas County Children Services Board, on November 21, 1997. On that day, a caseworker went to the house occupied by appellant, but was denied entry. With the aid of police, the caseworker eventually entered the house and found it filthy and roach infested. Drug paraphernalia was also present.
Ashley and the children of appellant's sister were removed from the home. A subsequent physical examination of Ashley revealed numerous bruises of varying ages and sizes over much of her body. Both of her eyes were black. Trauma injuries to the inside of her legs made it difficult for her to stand. These injuries and similar harm to appellant's sister's children were eventually determined to be the work of appellant's brother-in-law who was ultimately imprisoned for child abuse.
Ashley and appellant were examined by health professionals. Three-year-old Ashley was found to be developmentally delayed with no apparent physical explanation. Appellant was found to have a limited intellectual capacity, likely due to brain trauma suffered in an automobile accident as an infant.
Eventually, a case plan was set in place, calling for counseling and parenting classes. According to appellant's caseworker, appellant delayed participating in either service. On July 8, 1998, appellee moved for permanent custody. In October, nearly a year after Ashley was taken from appellant and several months after the permanent custody petition, appellant began parenting classes. Although appellant completed a seven-session parenting class, her instructor, nevertheless, testified that appellant's participation in the group was slight and her understanding of the material limited. Similarly, appellant was transferred from clinical therapy to vocational rehabilitation services because of the therapist's perception that appellant lacked the "insight" to benefit from therapy and that job training would be more useful for her.
On April 28, 1999, the matter proceeded to trial on appellee's motion for permanent custody. At trial, appellant's therapist and parenting teacher testified that she did not know if appellant could now protect herself and/or Ashley from domestic violence or other kinds of abuse. Appellant's social worker's response to a similar question was, "I fear she cannot." At the conclusion of the hearing, the trial court found that despite appellee's efforts, appellant failed within a reasonable period of time to remedy the condition which caused the child to be removed from the home. The court concluded that Ashley could not now, nor in a reasonable period of time, be placed with appellant. Consequently, the court terminated appellant's parental rights and granted permanent custody of Ashley to appellee.
Appellant now appeals that judgment, setting forth the following two assignments of error:
 "I. THE TRIAL COURT ERRED IN AWARDING PERMANENT CUSTODY TO APPELLEE WHEN APPELLANT WAS NOT AFFORDED EFFECTIVE ASSISTANCE OF COUNSEL.
 "II. THE TRIAL COURT ERRED AND DENIED APPELLANT A FAIR TRIAL BY IMPROPERLY ADMITTING GRAPHIC TESTIMONY ABOUT PHOTOGRAPHS THAT WERE RULED INADMISSIBLE."
 I.
Parties to an involuntary termination of parental rights proceeding are entitled to the effective assistance of counsel.Jones v. Lucas Co. Children Services Bd. (1988), 46 Ohio App.3d 85,86. Our standard of review for effective assistance of counsel in termination cases is the same as that afforded a defendant in a criminal case;
 "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. at 86-87 quoting Strickland v. Washington (1984), 466 U.S. 668, 687.
Appellant recites a litany of acts or omissions which purportedly demonstrate that her trial counsel's performance was substandard: 1) counsel's failure to "keep in contact with her prior to the hearing or meet with her prior to the day of the hearing"; 2) counsel's untimely motion to withdraw as appellant's attorney; 3) counsel's failure to call appellant's husband and mother-in-law as witnesses; 4) counsel's inviting hearsay testimony, although inadvertent, that appellant personally abused Ashley; 5) permitting detailed testimony of photographs which had been deemed inadmissible; 6) subjecting appellant to cross-examination by calling her as a witness; and, 7) neglecting to request a guardian ad litem be appointed for appellant due to her "mental impairments."
We shall reserve our discussion of testimony relative to the photographs for appellant's second assignment of error.
With respect to the issues of whether counsel should have called specific witnesses or permitted appellant to testify, these are trial strategy judgments and, therefore, presumed effective. Id. at 687.
There is no evidence of record to support appellant's assertion that counsel was negligent in trial preparation. Our own examination of the proceedings reveals that counsel was well versed with the case and vigorously asserted appellant's cause.
As far as the remainder of appellant's asserted counsel deficiencies, even assuming, arguendo, that an untimely motion to withdraw, a cross-examination "mistake" or a failure to request a guardian satisfy Strickland's first prong, appellant must also demonstrate that these acts or omissions operated to her prejudice. "Prejudice," for Sixth Amendment purposes, exists only when the lawyer's performance renders the result of the trial unreliable or the proceedings unfair. Id. Appellant must show that there exists a reasonable probability that a different result would have been obtained but for counsel's deficiencies. Id. at 694. See, also, State v. Lott (1990), 51 Ohio St.3d 160.
Appellant has offered no argument detailing how an earlier motion to withdraw as counsel or the appointment of a guardianad litem for appellant would have altered the outcome of this proceeding.
Concerning the "invited" testimony that appellant herself abused Ashley, appellant points to the trial court's finding that Ashley "* * * suffered on-going neglect and abuse while in her care" as unsupportable without this testimony. We disagree. The testimony concerning the varying ages of Ashley's bruises and appellant's own testimony that her brother-in-law struck the child on more than one occasion, supports the finding at issue. Moreover, the court made no specific finding that appellant herself was an abuser.
Accordingly, appellant's first assignment of error is not well-taken.
 II.
When Ashley was first taken from appellant's custody, she was examined by a nurse who took several photographs of her injuries. When appellee attempted to lay a foundation for the introduction of these pictures into evidence, the nurse testified that the pictures were not a fair and accurate depiction of Ashley's injuries at the time they were taken. A camera malfunction caused the photographs' color rendition to be inaccurate. For this reason, the court excluded the pictures from evidence.
Nevertheless, the examining nurse testified at length concerning the injuries she observed when the pictures were taken. It is this testimony which is in contention; appellant argues that the nurse's testimony is nothing more than a backdoor admission of evidence which has been excluded.
We disagree. The photographs were meant to be a visual depiction of the witness's direct observation. They were, however, excluded from evidence because they did not match the witness's own observation. See Midland Steel Products Co. v.U.A.W. Local 486 (1991), 61 Ohio St.3d 121, 129-130. This in no way taints the propriety of a witness's testimony concerning her direct observations.
Accordingly, appellant's second assignment of error is not well-taken.
On consideration whereof, the judgment of the Lucas County Court of Common Pleas, Juvenile Division, is affirmed. Costs to appellant.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
 _______________________________ JAMES R. SHERCK, J.
PETER M. HANDWORK, J., MELVIN L. RESNICK, J., CONCUR.